Our next case of the morning, 413-0515, People v. Michael Anderson, for the appellant, Mr. Gomez, and for the appellee, Ms. Brooks, you may proceed. Your Honor, I'd like to reserve five minutes for rebuttal. Oh, you're from the North. Yes. You have rebuttal whether you reserve it or not. Okay. We're very generous here. Well, thank you. Well, good morning, Your Honors, and may it please the Court. My name is Michael Gomez from the Office of the State Appellate Defender, and I am here on behalf of my client, Michael Anderson. Your Honors, this case represents a scenario that plays itself out all over the country, in high school hallways, in parking lots, and as in this case, a park. This was a case about two teenage girls in a playground fight because they didn't like each other over a boy. That's it. They didn't like each other. They talked about fighting before the park. They talked about fighting at the park, and so they got into a fight. Now, my client, Michael, the boy that they fought over, was convicted of aggravated battery and received a four-year sentence for a fight that he was not around when it started and a fight that he actually broke up. Now, there is a video of the fight, a portion of the fight, taken by Rhiannon Fisher, Carly Northcutt's friend. Now, this video shows when Michael Anderson entered the fight when he ran from a football field's length away from the basketball courts and encountered the situation, where he saw a man reaching in to touch his girlfriend, and he didn't know what he was going to do. He didn't know if he posed a threat, if he was part of the fight, so he goes directly and pushes him away. Now, the state concedes five clear or obvious errors in admitting improper lay witness testimony regarding the events depicted in this fight. Now, the state argues that the evidence was overwhelming here, but it was not. The state presented insufficient evidence to find Michael Anderson guilty under the theory the state pursued at trial and under the theory that the state presented on appeal. Now, I'd like to start off with the theory of accountability that the state pursued at trial, which was Michael was accountable for pushing away two bystanders and preventing them from intervening in a fight. And that was the culpable conduct, the basis for accountability. As a preliminary matter, if that is proven, is the defendant guilty of aggravated battery on an accountability theory? Your Honor, if the state proves that the defendant committed an act that aided the commission of an offense with a specific intent to aid that specific offense, then the jury or the trier of fact can find an individual accountable for the actions of the principal. You restated it in a way that isn't exactly what I was asking. And I'll actually just use the language from your brief at page 13. You say, quote, however, the state failed to prove that Michael pushed away the two bystanders with the specific intent to allow the fight to continue. That is, to aid Araceli in her commission of aggravated battery as is required to make Michael legally accountable. So there it sounds like you're acknowledging that if the evidence establishes Michael's intent was to prevent bystanders from intervening to break up the fight, then he can be found legally accountable for the aggravated battery. Is that true? Yes, Your Honor. If the state proves that Michael had the specific intent to prevent bystanders from intervening in the fight with the intent to facilitate Araceli's commission of the battery, then that would be sufficient to sustain his conviction. But here, Michael broke up the fight. There's undisputed evidence that Michael was only one of two individuals who broke up this fight, which is the exact opposite of wanting a fight to continue. Now, I'd like to provide the court with a breakdown of the timeline in the video. The state says that Michael spent seven seconds brushing away bystanders before he broke up the fight, but that is a bit of a mischaracterization of the video. Michael runs from a football field to a football field and a half away. If you're going to assert that, you need to have something in the record that demonstrates it. And while I shouldn't bring in extra judicial knowledge, it isn't 100 yards from the basketball court to the skate park. Your Honor, Darian Davis testified that the basketball court was 100 to 150 yards away. Somebody else testified it was 100 to 150 feet away or something in that range, which is considerably different. I don't know that it makes any difference, but it's not that far. I can't erase that from my knowledge. Yes, Your Honor, and the point is not so much even the distance. It's the fact that he was running, that he was not around when the fight happened. He didn't know how it started. He was playing basketball with his friends for about half an hour. He hears a commotion at the skate park and runs to find out what's happening. Now, we have the advantage of the video of having a perfect vantage point from Rhiannon's camera, a pretty clear video. We have the benefit of replays and the comfort of our chairs to watch this video. But from Michael's perspective, which is the perspective from which we have to determine his specific intent, he's running. We don't know who, if anyone, is standing in his way. All he sees is two girls fighting on the ground with people reaching in. One boy in particular with a skateboard in his hand reaching in with another hand. And he didn't know if he was part of the fight, if he was going to commit a battery on Aracely or Carly. So his first intent was to push away this bystander, not to touch his girlfriend. And he tells her, don't touch my girlfriend. The state even concedes on pages 11 through 12 and 17 of its brief that his priority was to push away this unknown male stranger. And that's exactly what he does. Well, as you say, we do have the benefit of the video. And we've all seen the video here. So we have that benefit. And it certainly appears that there is nothing blocking the defendant's view of the two combatants as Aracely is slamming the other girl's head on the cement as he's running in. It's not that he's approaching a circle of people surrounding the fighters. It looks like he has a clear view as he's running in of the two girls fighting. Would you agree? Your Honor, there's no evidence to say what was in his way, if any one was in his way. Well, I mean, you have the video evidence. Yes. And is there anything in the video that would indicate that his view of the two girls fighting was blocked as he got to the scene of the fight? There is nothing in the video that shows, from the vantage point of Rhiannon Fisher, there's nothing in the video that shows that his view would be blocked. But there are children and teenagers standing all around. So I cannot say for sure that his view was not obstructed in any way. But as the video depicts, he goes straight to this stranger. His eyes are on the stranger. He brushes past Courtney Troyer, pushes away the stranger, and tells him, don't touch my girlfriend. At that point, that's seconds 18 through 21. At second 23 is when Darian Davis enters the video. And then you see Michael Anderson responding to someone who said something to him. One second later, Araceli stands up and starts dragging Carly by her hair. Just one second later, Darian grabs Araceli by her waist, and one second later, Michael joins him in pulling them apart. Now, the rest of the video shows Michael and Darian pulling Araceli apart, and at one point, Araceli continues grabbing onto Carly's hair, and Michael is the one who tells her to let go. So he's not letting this fight go on. He didn't push away the bystanders to let this fight go on for Araceli to beat up further Carly. He broke up the fight mere seconds later. Well, isn't it true that after he pushed away the stranger with the skateboard, that he made an effort to advance beyond the fight, and thrusting his chest out, holding his arms like something like this, apparently made three or four other people who at that point weren't trying to break up the fight, he lets them know to stay back? Well, it looks like that. That would be an interpretation of the video, and that would be something that the jury could review or determine on its own. But what the video does show is that he does push away the unknown stranger. He does turn around. Someone says something to him, and he responds.  So he did not have the specific intent at any point to further this commission of the battery. Instead, he had the specific intent to end the battery, which is exactly what he did, and that is insufficient to find him guilty under a theory of accountability of aggravated battery. Now, the state of the jury believed that he prodded or incited or encouraged or ordered his present girlfriend to engage in the fight, and then left and came back and did what he did, even though it took a short amount of time. Could a jury view that as being sufficient for accountability purposes? Your Honor, I would say in this case, no. There is insufficient evidence to find him guilty under the solicitation theory. There is some evidence of that that's contradictory? It's contradictory, and there is just insufficient evidence to find that he even, one, solicited Araceli to commit this battery, or two, that he had the specific intent at that time for her to commit the battery, and three, that Araceli committed the battery in response to his alleged solicitation. And I think the state didn't pursue that theory at trial, and I think now on appeal is trying to save this unjust conviction by relying on this other theory for which there is a lack of evidence. Before, at trial, the state calls the video the main witness, because the issue was Michael pushing away the bystanders when he entered the fight. Now, the video is relegated to mere circumstantial evidence of his intent of his alleged solicitation before the fight even began, half an hour before the fight began, when in the heat of argument with his ex-girlfriend, his girlfriend is called over, and they start arguing. They had been talking about fighting for two weeks earlier, and finally this is the first time they saw each other, so they wanted to fight, and everyone, there is undisputed evidence that the fight was mutual. They talked about fighting, they wanted to fight each other. Carly even put her hair up, took out her weave, took off her shoes, and was getting ready to fight, which Araceli did the same. This was always a mutual fight between two teenage girls at a playground. There is also no evidence to suggest that Araceli's eventual commission of the battery was in response to Michael's alleged solicitation. Now, this court in People v. Cruz and the Illinois Supreme Court in People v. Moss stated that the difference between solicitation as an echoed offense and solicitation as grounds for accountability have to be three things. First is that the defendant solicited someone to commit a specific offense. Two, that the defendant had the specific intent for that person to commit that offense. And three, in response to the defendant's solicitation, the principal committed the offense. Now here, Araceli and Carly talked about fighting beforehand. Even Carly, who testified that Michael Agdon, or Rhiannon, who testified that Michael Agdon had done the fight and that he encouraged the fight, that came after any talk of fight. He didn't implant any criminal idea to commit this battery on an unsuspecting victim. These were two girls who just wanted to fight. And then half an hour elapsed. He leaves to play basketball. Nothing happens. There's even some testimony from Araceli that things kind of cooled off. That Carly started talking more stuff, that Araceli was just letting things go. And then finally, Carly wanted to fight. And everyone around them was encouraging them to fight. And it was only when they were standing face-to-face that Carly threw the first punch. So, in that scenario, Araceli did not commit any battery in response to Michael's alleged solicitation. It would have been in response to Carly's punch. Now, what's the evidence that she threw the first punch? Well, there's evidence, there's only testimony from Araceli that Carly threw the first punch. And then there's testimony from Carly that Araceli threw the first punch. And no one else testified as to how this fight started. Let me ask you a question about the stranger. Was he ever identified? The stranger was never identified. The stranger does not testify at trial. The only benevolent intent that is ascribed to the stranger came through Officer McGonigal's improper testimony, which the state concedes, that he explained what the video showed to the jury. He told the jury, it appears that one girl loses consciousness, which there was no foundation for that testimony. Then it appears that two people tried to intervene, and one person stops them from intervening. Now, this stranger, just seconds before, was jumping and cheering when Araceli took Carly down to the ground. He was encouraging the fight.  Now, he had a skateboard in his left hand, and he was reaching in with his right hand. At that point is when Michael approached the situation, didn't know if he was part of the fight, if he had any part in the starting of the fight, or if he was going to escalate the situation. So, Your Honors, again, this was a playground fight between two teenage girls over a boy, and a boy who did not participate in the fight in any way, who actually broke it up. And for that, he was convicted of aggravated battery and receives a four-year sentence. So we therefore ask this Court to reverse Michael's conviction for aggravated battery. And if the evidence, if the Court finds that the evidence was not legally insufficient, we ask this Court to find that the five clear or obvious errors that the state concedes on the most important evidence in this trial, which was the video, warrants reversal and a new trial. Thank you. Thank you, Counsel. Ms. Brooks. Good morning, Your Honors. May it please the Court and Counsel, my name is Allison Paige Brooks, appearing on behalf of the people. First of all, I'd like to respond to the defense claim that the prosecution did not raise the issue of the solicitation with intent to promote part of the accountability at trial when the prosecution's opening statement did refer to the fact that the fight was instigated. And page 84 mentions that the defendant, okay, it says here, he also helped instigate this fight in the beginning. You'll hear testimony to that, that he was egging the girls on. And then in the closing argument on page 66, then the bulk of the closing argument was referred to the aiding with intent to facilitate, but page 66 at the very end then talks about instigating that by calling Rios over, again, to go at each other. So essentially there was part of the... You're reading from opening statements and closing arguments. Was there anybody who testified to that? Yes. Rhiannon Fisher testified on redirect page 110 that the defendant was egging it on. And then he's mentioning how he was saying rude comments to Northcott about how Rios, quote, was going to beat her profanity words. I assume that she was reluctant to actually say the words in court. And then it was asked, and you say he said rude things. There's something to the fact that his girlfriend was going to beat her up. And she replies yes, like he was egging on the fight. She didn't remember the exact words. Carly Northcott on page 118 says he wanted his girlfriend over there, so he called her over there. And then on 119 was asked, do you remember Michael saying anything when the talk turned to fighting, talk about fighting? And her answer was on page 119, he was telling her to fight me. That's Northcott's testimony. And then Northcott says that when the defendant left to go play basketball, that she was still arguing with Rios. And the verbal argument eventually turned physical. So essentially there was testimony that this was instigated, that the defendant did in fact tell Rios to fight Northcott. And that is solicitation, and that is if it was done with intent to promote the commission of the offense, which in this case that was the inference, reasonable inference the jury could make. Particularly, it's like both elements of these solicitations play on each other and support each other. The video showing what the defendant did when he arrives at the scene, not breaking up the fight, pushing away bystanders shows that he intended them to fight. And the fact that, well, what is he doing when he's pushing away the bystanders, what's his intent there? Well, his intent is established also circumstantially in supporting of what his intent is, because he initially told them to fight. He told his girlfriend to fight Northcott at the very beginning. So that then informs the jury as to what was in the defendant's mind when he rushes in and starts pushing people away for several seconds. And that's why both elements were alleged and argued, and it was properly before the jury. The jury received instructions on accountability that did refer to both elements, solicitation with intent to promote and aiding with the intent to facilitate. So it is unlike the Pendleton case. I'd like to briefly refer to Pendleton, which is cited in the defense reply brief, which is there was the charge of calculated criminal drug conspiracy. The element of Section 405B3 says, obtains anything of value greater than $500 from or organizes drugs or finances such violation or conspiracy. In that case, the state only charged the first part, obtaining anything of value greater than $500. And once the appellate court said, nope, there was no evidence that the defendant obtained $500 of greater value, then the state said, oh, well, what about this evidence in support of this other element of the alternative element of the crime? And they said, well, that was never charged. So the state could not try to sustain the conviction on evidence of an offense that was never charged. This is not an offense that wasn't charged. This offense was charged. It was aggravated battery. It was charged by accountability. And it was presented to the jury that way and argued to the jury that way. And there were instructions that they could convict on that basis. So both theories are properly before this court. There's no basis to find forfeiture, like the defendant says. So for that respect, this court has to view the evidence in light most favorable to the prosecution. And so the defense cites conflicting evidence. There is defense evidence that, according to Rios and defendant, denied that the defendant ever told Rios to fight Northcott. And there's also claims from Darian Davis, the defense witness and defendant, that he spent 30 minutes playing basketball. And according to the defendant's own testimony, the argument was over before he left to play basketball. But there's contrary testimony that could be believed by the jury from the prosecution. Ms. Carly at Northcott said that they were still arguing and it turned physical. She didn't say exactly how long that was. Another thing is Darian Davis, when he talked about the 30 minutes, he said he was in a decent game of 21. The next thing you know, like I say, we just heard it, we ran over there. He said he was playing for a while, quote, enough to where all of us worked up a sweat. So I mean, we was there for a minute. That's what he said, a minute. So his testimony was even self-conflicting. And although the defendant also said 30 minutes, this court's not required to accept the testimony of the defendant or the defense witnesses. The jury can resolve the conflicts in the evidence. And when there is a conflict in the evidence, this court is required to accept the evidence and take it in a light most favorable to the prosecution and resolve those conflicts in favor of the prosecution and make the reasonable inferences that do favor the prosecution. The defendant's theory of this case is this is just a typical fight between girls over a boy. And it happens all the time. Well, really what happened here is, according to Northcott, the defendant called Rios over, introduced her into this, mentioned, according to the impeachment of Rios, I think was that he was telling Rios, because she was asked by the police hours afterwards why she got so mad. And her answer was that the defendant had told her that Carly was, quote, talking stuff. But it's not just about talking stuff. I mean, that's what the defense says is the only basis for solicitation. It was really the egging on and the idea that when Northcott says he told Rios to fight her, I mean, that's direct solicitation, not just simply calling her over saying that Northcott's talking stuff about Rios and therefore sort of implying that they should do something about it. It was actually a direct solicitation. So in this case, calling Rios over and telling her to fight Northcott is an orchestration of this crime. This would not have happened if the defendant didn't call over the other girl, tell her what the other girl, Northcott, was saying about Rios, and then directing Rios to get into a fight with them, with Northcott. That's orchestration. That totally justifies the prison sentence and the felony conviction on the offense of aggravated battery. So it's not just a typical fight. This was something orchestrated by the defendant. And the idea that this fight was mutual, there's also evidence in the record that other people were encouraging them to fight. Well, it's not a defense that they would have fought anyway, because the jury can make the reasonable inference that in order to turn the in quo defense into a completed defense, to make the defendant accountable, Rios has to then batter Northcott in response to the solicitation. That, in response to part of this crime of accountability, can be established by reasonable inference from the prosecution's evidence. So the fact that they were somehow preparing themselves, taking shoes off and taking accessories out of their hair or whatever, in order to prepare for a mutual fight, does not necessarily mean the defendant did not instigate this, and they were not fighting in response to that instigation, which they were fighting in response to instigation. And whoever threw the first punch doesn't matter, because in a situation where both parties agree to fight on mutual terms, which is what happens here, there is no right of self-defense for the defendant to rely on, through Rios, for example. To say that, well, Rios did not commit aggravated battery because of the defense evidence that Northcott threw the first punch, and therefore Rios was only acting in self-defense. That's not the case in a situation where all the evidence shows that this was a mutual fight. There is no right of self-defense. So if Rios committed an aggravated battery by slamming Northcott's head against concrete, that is something that the defendant could be accountable for. On that point, let me just ask a hypothetical here. Okay. Let's say the defendant doesn't know these two women, is on a basketball court, just the same scenario we have here, except he doesn't know the two women, comes running up, sees the fight going on, and according to your theory here, he intervenes to keep people from breaking up the fight. Is he accountable for the aggravated battery in that scenario? It depends on the rest of the evidence and what the jury finds. It's a fact question. What is the defendant's intent in that situation? Let's say that it's very clear from the jury's standpoint that he acts with the specific intent to keep others from breaking up that fight. The only thing here is he doesn't know the two women that are fighting, doesn't know anything that preceded the fight, just comes upon two women fighting and prevents bystanders from breaking up the fight. In that scenario, and based on his actions, his intent to keep others from breaking up the fight is clear. Is he accountable for the aggravated battery? It seems like that would be proof that he aided the commission of the crime with intent to facilitate that commission of the crime, and that is the straight application of the accountability statute. So it wouldn't matter whether he knew the women or not if that was proved to be his intent, because then that would be a fact question for the jury. So essentially what the defendant is arguing here is the evidence is conflicting and it's a fact question for the jury, but this court hears sufficiency of the evidence arguments all the time where the evidence is conflicting and it's a fact question for the jury, and when the jury makes a reasonable judgment in resolving those issues, contested issues of fact where the evidence is in conflict, the conviction is going to be upheld. So for that reason, the state wants to make an emphasis here on the intent to facilitate part of this. The defense argument is, well, he did in fact break up the fight. Well, he joined in Davis the second after Davis started breaking up the fight. However, when he's doing all this pushing away, this is in the several seconds where Rios is landing several blows against a defenseless Northcutt, slamming her head in the concrete. Well, when he intervenes to break up the fight, what happens is now Rios is getting up and Northcutt is getting up and Rios has Northcutt's hair and is starting to drag her, and Northcutt is flailing her arms. So in this situation now, at that moment, Northcutt is no longer defenseless. So the defendant essentially is stopping the fight on the terms that he chooses, and by permitting Rios, the jury can make the reasonable inference that what happened is the defendant permitted Rios to continue to batter Northcutt while she remained defenseless. And at the point that Northcutt starts flailing her arms again, that is the point in which the defendant tries to separate them and tells Rios to let go of Northcutt's hair. So if that's the reasonable inference that can be made, then the fact that the defendant ultimately stopped the fight on his own terms does not mean that he did not intend to facilitate Rios' commission of aggravated battery while Northcutt remained prone and defenseless. So, yeah, okay, I mentioned about the basketball for half hour. I mean, that's defense argument. That was defense evidence. It was not something the jury had to accept as a matter of uncontested evidence. It was, in fact, not something the jury had to accept, that he was playing basketball for half hour, and therefore the defense argument that it was not. It is however uncontested, I think, that he left the immediate scene of the fight and went off to do something for a period of time, whether it was a short period of time or a longer period of time. But the defense's claim, I think, is that the period of time matters. How long it was matters. And I think what I was going to say is, according to Rios' testimony in 146, her claim was that they weren't going to do anything, so he went to play basketball. Everyone was encouraging her. And down later on in that paragraph it says, and then another five minutes later she comes back and was like, you want to fight me. So according to Rios, it seems like it was only about five minutes of a break after the argument ended, the defendant went to play basketball, and then Northcutt steps in, and then they start to fight. So it's not uncontested. I think Rios puts that as about more like five minutes of time. The only other thing I was going to mention is that the defense claims that some of this testimony, lay opinion testimony, was improper. But however, this court can consider even improperly admitted testimony in determining whether evidence was sufficient to convict for purposes of deciding whether double jeopardy bars are neutral. So the fact that the state would concede that certain evidence was improperly opinion testimony in interpreting video or what words meant, even that testimony can be considered in terms of the claim that evidence was insufficient to convict. So for those reasons, the state requests this court to affirm. I'm willing to entertain any other questions. Thank you. Rebuttal. I'd like to start off with the state's waiver of the argument that Michael was accountable for the alleged solicitation of the fight in the beginning. And what this represents, this new theory represents, is that the state concedes on page 18 of its brief that the evidence was closer on the issue of Michael pushing the bystanders and whether he did so with the intent to aid or facilitate that crime. So the state is trying to save a conviction under this new theory, which it cannot do. Under Pendleton, yes, it was a charge. The defendant was charged with the first prong of one element of that charge, and the state on appeal tried to save the conviction with another element of that prong. But here, talking about two different conducts, here's the same situation. There are two different culpable conducts. One is solicitation, what he supposedly did to solicit the Araceli to commit this particular offense. And then the other conduct is the pushing of the bystanders. The jury was only ever told that the pushing of the bystanders was the culpable conduct to find accountability for aggravated battery. On pages 61 through 63 of Volume 4 of the Report of Proceedings, the closing argument, the state defines accountability and then says that pushing the bystanders is aiding or attempting to aid the commission of the offense. I'd like to also reference the time period, whether the half hour matters and it does matter. It doesn't matter that it was half an hour, but it matters that Michael Anderson left. He did not know that this fight started. It is undisputed that he left to play basketball. It is undisputed that he was not around at all when the two girls started fighting. Darian Davis and Michael both testified that it was half an hour for basketball, which is a relevant factor to determine whether, one, Araceli did fight or did commit this battery in response to Michael's alleged solicitation. And whether Darian says minute, that was a colloquial expression that he had been there for a while. And to say that this fight was orchestrated by Michael ignores the undisputed evidence that Carly and Araceli did not like each other. They had been wanting to fight for the past two weeks. Araceli called, I'm sorry, Carly called Michael's cell phone and Araceli picked up two weeks earlier. And Araceli told her, don't call Michael's phone anymore. And Carly said she could do whatever she wanted. Araceli told her, well, next time we see each other something will happen. The next time they saw each other was September 12, 2012, and that's when they got into a fight. Rhiannon testified that Michael egged on the fight. Carly said he told her to fight me. This was all after the girls had already started to fight. There is no room for proximate causation or foreseeability in the context of solicitation and accountability as the Supreme Court stated in People v. Cooper. So him calling Araceli over to tell her that Carly was talking stuff about her did not know that it would turn into what it turned into. No one did. He certainly didn't know because he was away playing basketball. Finally, I'd like to address that Michael did break up this fight. He did not break it up. He broke it up on his own terms because he was the only one who broke it up. He and Darian were the only ones who broke it up. None of the people standing around them, cheering them on while it was going on, none of them broke it up. And he did not break it up when Carly was finally defending herself. If you look in the video, second 26 is when Michael starts pulling them apart and then just after is when Carly starts to lay on her arms. And then he spends the rest of the time pulling them apart and tells Araceli to let go of Carly's hair. And finally, the improper witness testimony regarding the events depicted in the video, these are five errors, five distinct errors from all of the witnesses and one defense witness concerning what the state called the trial the most important evidence. And now, particularly harmful was Officer McGonigal's testimony, which instructed the jury how to view this video, which was a defenseless north cut, two people trying to break it up, and one person preventing them from doing so. That is not what happened, Your Honor. So we ask this Court to reverse Michael Anderson's conviction outright or in the alternative grant him a new trial. Thank you. Thank you, Counsel. We'll take this matter under advisement. Recess for lunch.